# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

```
* * * * * * * * * * * * * * * * * * * *
ELIANA COWART,                    *
                                  *    No. 16-513V
            Petitioner,           *    Special Master Christian J. Moran
                                  *
v.                                *
                                  *    Filed: September 8, 2022
SECRETARY OF HEALTH               *
AND HUMAN SERVICES,               *
                                  *    Attorneys' fees and costs,
                                  *    interim award, expert costs
            Respondent.           *
* * * * * * * * * * * * * * * * * * * *
```

Sean Greenwood, The Greenwood Law Firm, Houston, TX, for Petitioner;
Voris Johnson, United States Dep't of Justice, Washington, DC, for Respondent.

**PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS** [1]

Ms. Cowart requests an award of attorneys' fees and costs. She is award **$60,025.99.**

## Procedural History

Ms. Cowart ("petitioner") claimed that a meningococcal conjugate vaccine caused her to suffer fibromyalgia and sought compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §§300aa-10 through 34 (2018). Pet., filed April 26, 2016.[2] Medical records were filed periodically. After reviewing the case materials, the Secretary recommended against compensation.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

[2] When the petition was filed, the petitioner was Ms. Cowart's father, because Ms. Cowart was below the age of majority. In due course, Ms. Cowart, who married and changed her name, became the petitioner. For sake of simplicity, this decision treats Ms. Cowart as the petitioner throughout.

Resp't's Rep., filed Feb. 24, 2017. One issue identified by the Secretary was that Ms. Cowart had not presented a medical record from a treating doctor or a medical opinion from a retained expert to support her claim.

In the following status conference, Ms. Cowart indicated she would file an expert report. The undersigned issued a set of proposed instructions for the parties' experts to follow. See Order, issued Mar. 21, 2017. The Instructions explained how the petitioner's expert was to prepare invoices. In the absence of feedback from the parties, the expert instructions became final on April 10, 2017. ECF No. 34.

After a few motions for extensions of time, on October 3, 2017, Ms. Cowart filed an expert report from Michael McCabe, Ph.D. Exhibit 20. Dr. McCabe, who is not a medical doctor, indicated that the immediate adverse reaction that Ms. Cowart exhibited in response to the vaccination was consistent with documented side effects to the vaccine.

During the October 11, 2017 status conference, the undersigned noted that Dr. McCabe failed to comply with the expert instructions. See Order, issued Oct. 12, 2017. Specifically, Dr. McCabe failed to identify the condition(s) that the vaccine allegedly caused and did not outline a theory explaining how the vaccine can cause the diagnosed condition. The instructions were reattached to that order with additional underlining and bolding to assist Dr. McCabe in drafting preparing his supplemental report. Id. Ms. Cowart filed Dr. McCabe's revised report on November 17, 2017. Exhibit 26.

Subsequently, the Secretary filed an expert report authored by Dr. Carlos Rose (exhibit A) on February 20, 2018. After moving for leave to file an additional expert report, the Secretary filed an expert report authored by Dr. Deborah Anderson (exhibit F) on May 2, 2018.

On August 9, 2018, Ms. Cowart filed an expert report authored by Dr. Tracey Marks. Exhibit 37.

On September 4, 2018, Ms. Cowart filed a motion for an award of attorney's fees and costs on an interim basis. One component of this request was $6,332.50 for Dr. McCabe's work. Respondent did not challenge the petitioner's good faith or reasonable basis, and the petitioner was found eligible for an award of interim attorney's fees and costs. A decision issued awarding $49,625.37 in interim fees and costs. See Interim Fees Decision, 2018 WL 7286513 (Fed. Cl. Spec. Mstr. Dec. 10, 2018). This Interim Fees Decision declined to award any reimbursement for Dr. McCabe's work because Ms. Cowart had not justified the proposed hourly rate, which was $490 per hour.

While her motion for interim attorney's fees and costs was pending, on October 9, 2018, Ms. Cowart filed another report authored by Dr. McCabe. Exhibit 53.

The Secretary filed supplemental expert reports from Dr. Rose and Dr. Anderson (exhibits J and K) on February 4, 2019. On February 20, 2019, Ms. Cowart filed a status report, stating she would submit a report from Dr. Eric Gershwin to respond to rheumatology issues that Dr. Rose raised in his report. See ECF No. 91.

A status conference was held on February 28, 2019 to discuss respondent's objections to the addition of Dr. Gershwin. Ms. Cowart acknowledged that Dr. McCabe's opinion was insufficient for her claim of causation. See Order, issued Mar. 4, 2019. Ms. Cowart was permitted to allow Dr. Gershwin to prepare a report and was reminded to comply with the Instructions, issued on April 10, 2017 and October 12, 2017. Id. The undersigned cautioned that a non-complaint report may jeopardize reimbursement for the cost of preparing the report. Id.

On March 29, 2019, Ms. Cowart filed Dr. Gershwin's expert report (exhibit 74) and medical literature, along with updated medical records. A status conference was then held on April 24, 2019 to discuss Dr. Gershwin's report. The undersigned noted that Dr. Gershwin's report required supplementation because he did not address timing, i.e., when Ms. Cowart first manifested symptoms of fibromyalgia. Dr. Gershwin was again reminded to review the expert instructions. See order, issued April 24, 2019.

Ms. Cowart filed Dr. Gershwin's supplemental report (exhibit 79) on May 28, 2019. The Secretary filed a responsive expert report from Dr. Rose (exhibit Q) on June 25, 2019. The parties next proceeded to briefing.

On August 1, 2019, the undersigned issued an order for submissions as part of a potential ruling or decision on the record. Ms. Cowart filed her brief (stylized as a motion for ruling on the record) on October 9, 2019. The Secretary submitted his brief / response to Ms. Cowart's motion on December 10, 2019. Ms. Cowart submitted her reply on December 17, 2019.

After the undersigned reviewed the briefs, additional questions were posed to the parties to supplement their positions. See Order, issued Jan. 27, 2020. Ms. Cowart filed her supplemental brief on February 14, 2020, and the Secretary filed his supplemental brief on February 27, 2020.

3

On May 20, 2020, the undersigned issued an order regarding entitlement, denying Ms. Cowart's claim regarding fibromyalgia. See Order Regarding Entitlement, 2020 WL 3264272. Subsequently, the parties began planning for a hearing. See Order, issued Sept. 15, 2020. Ms. Cowart could have proceeded on a claim that the vaccination caused an immediate adverse reaction that lasted longer than six months (rather than the fibromyalgia claim). Instead, during the following status conference, Ms. Cowart stated her intention to file a motion for review regarding her fibromyalgia claim. See Order, issued Oct. 16, 2020.

On December 22, 2020, Ms. Cowart moved to voluntarily dismiss her case pursuant to Rule 21(a). The undersigned subsequently issued a decision denying entitlement on January 5, 2021. 2021 WL 253977. Judgement entered on February 5, 2021. It appears that Ms. Cowart may have intended to file a motion for review but missed the opportunity to do so. A notice of appeal was filed and assigned to the Federal Circuit on April 14, 2021. ECF No. 140. Because the Federal Circuit lacked jurisdiction, Ms. Cowart voluntarily withdrew her appeal. ECF No. 142.

On May 13, 2021, Ms. Cowart filed the pending motion for an award of final attorneys' fees and costs. The motion seeks a total of $69,593.49, comprised of $49,424.80 in attorneys' fees and $20,168.69 in attorneys' costs. Ms. Cowart did not incur any costs.

The Secretary filed a response to Ms. Cowart's motion. The Secretary represented that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Resp't's Resp., filed June 9, 2021, at 2. With respect to amount, the Secretary recommended "that the [special master] exercise [his] discretion" when determining a reasonable award for attorneys' fees and costs. Id. at 3.

The undersigned observed that Ms. Cowart's final fees application lacked invoices from Dr. McCabe, despite being encouraged to include those invoices following the Interim Fees Decision. See Order, issued June 30, 2022. Ms. Cowart was ordered to file all invoices for Dr. McCabe. Id.

Ms. Cowart filed supplemental materials on August 1, 2022. To support the request for Dr. McCabe's work, Mr. Greenwood submitted an affidavit and documentation showing that his firm paid Dr. McCabe's company, Robson Forensic, $11,928.75. Mr. Greenwood did not provide any additional invoices. Instead, he stated the McCabe "invoices and receipts for payment are his business records and are not within my personal knowledge." Pet'r's Exhibit A.

This matter is now ripe for adjudication.

\* \* \*

## Analysis

**I.  Eligibility for An Award of Attorneys' Fees and Costs**

Even when a petitioner in the Vaccine Program does not prevail on his or her claim and does not receive compensation, a special master may award reasonable attorneys' fees and other costs if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1).

As the Federal Circuit has stated, "good faith" and "reasonable basis" are two separate elements that must be met for a petitioner to be eligible for attorneys' fees and costs. Simmons v. Sec'y of Health & Hum. Servs., 875 F.3d 632, 635 (Fed. Cir. 2017).

"Good faith" is a subjective standard. Id.; Hamrick v. Sec'y of Health & Hum. Servs., No. 99-683V, 2007 WL 4793152, at \*3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she honestly believes that a vaccine injury occurred. Turner v. Sec'y of Health & Hum. Servs., No. 99-544V, 2007 WL 4410030, at \* 5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). The Secretary has not challenged petitioner's good faith here, and the undersigned has little doubt that petitioner brought the claim with an honest belief that a vaccine injury occurred.

In contrast to good faith, reasonable basis is purely an objective evaluation of the weight of the evidence. Simmons, 875 F.3d at 636. An "objective inquiry" is an examination of evidence. See Chuisano v. Sec'y of Health & Hum. Servs., No. 07-452V, 2013 WL 6234660, at \*8-10 (Fed. Cl. Spec. Mstr. Oct. 25, 2013), mot. for rev. denied, 116 Fed. Cl. 276 (2014). Evidence that is relevant to determining whether there is reasonable basis for a claim may include medical records, affidavits from percipient witnesses, and opinions from retained experts. See 42 U.S.C. § 300aa–11(c).

The undersigned previously found that Ms. Cowart had a reasonable basis for bringing her petition and litigating her case up to the interim fees decision.[3] The undersigned similarly finds that Ms. Cowart maintained a reasonable basis for the remainder of the litigation, despite some deficiencies from experts. As

---

[3] However, reservations were held regarding the basis for Dr. McCabe's opinion. Deductions discussed below will account for the deficiencies of Dr. McCabe's contributions.

5

discussed below, contributions from Dr. McCabe and Dr. Gershwin deserve further scrutiny.

## II. Reasonable Amount of Attorneys' Fees and Costs

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Hum. Servs. 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Here, because the lodestar process yields a reasonable result, no additional adjustments are required. Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness. See McIntosh v. Sec'y of Health & Hum. Servs., 139 Fed. Cl. 238 (2018).

### A. Reasonable Hourly Rate

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. See Blum, 465 U.S. at 895. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Id. at 895 n.11. A petitioner's counsel in the Vaccine Program is paid the forum rate unless the bulk of the work is performed in a locale other than the forum (District of Columbia) and the local rate is significantly lower than the forum rate. Avera, 515 F.3d at 1349. If these two requirements are met, the Davis County exception applies, and petitioner's counsel is paid according to the local rate to avoid a "windfall." Id.; see Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 757–60 (D.C. Cir. 1999).

For cases in which forum rates apply, McCulloch provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. McCulloch v. Sec'y of Health & Hum. Servs., No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), mot. for recons. denied, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Court has since updated the McCulloch rates, and the Attorneys' Forum Hourly

6

Rate Fee Schedules for 2015–2016, 2017, 2018, 2019, 2020, and 2021 can be accessed online.[4]

Ms. Cowart requests compensation for attorneys Sean Greenwood, Kayleigh Smith, and Anna Carruth, as well as a paralegal and law clerk. Mr. Greenwood has charged $337 per hour in 2018, $363 per hour in 2019, $400 per hour in 2020, and $425 per hour in 2021. Ms. Smith has charged $215 per hour in 2018, $225 per hour in 2019, and $250 per hour in 2020. Ms. Carruth has charged $180 per hour in 2021 for brief contributions. The law clerk, Caitlin Erchick, has charged $160 per hour in 2020 and $170 per hour in 2021. Ms. Ward, a paralegal, has charged $150 per hour in 2019, $160 per hour in 2020, and $170 per hour in 2021.[5]

Special masters have considered and deemed the rates for Mr. Greenwood, Ms. Smith, and Ms. Carruth to be reasonable. Roach-Yohey v. Sec'y of Health & Hum. Servs., No. 17-1744V, 2022 WL 1075388 (Fed. Cl. Spec. Mstr. Mar. 4, 2022); Stillabower v. Sec'y of Health & Hum. Servs., No. 17-265V, 2020 WL 619686 (Fed. Cl. Spec. Mstr. Jan. 24, 2020). The undersigned also finds these to be reasonable.

The rates for Ms. Ward are also reasonable. Ms. Ward has previously been awarded less for work performed in 2019-2021. See Conley v. Sec'y of Health & Hum. Servs., No. 19-1458V, 2021 WL 3917016 at *2 (Fed. Cl. Spec. Mstr. Jul. 30, 2021); Roach-Yohey, 2020 WL 1075388 at *4. But, at other times, she has been awarded $150 per hour for 2019 work, $160 per hour for 2020 work, and $170 per hour for 2021 work. See Billing v. Sec'y of Health & Hum. Servs., No. 18-679V, 2021 WL 6059382 (Fed. Cl. Spec. Mstr. Dec. 1, 2021). Given the closeness of the proposed rates to those previously awarded, the undersigned accepts Ms. Ward's rates. No reductions are required.

B.  Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Saxton v. Sec'y of Health & Hum. Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). The

---

[4] The 2015–2016, 2017, 2018, 2019, 2020, 2021 and 2022 Fee Schedules can be accessed at: https://www.uscfc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

[5] There are discrepancies between the rates stated in petitioner's fees motion and the timesheets. See, e.g., Pet'r's Mot. for Attorneys' Fees and Expenses, at 9-10 (stating Ms. Ward and Ms. Erchick charged $163/hour in 2020 and $172/hour in 2021) and Pet'r's Exhibit 103 (listing rates for Ms. Ward and Ms. Erchick as $160/hour in 2020 and $170/hour in 2021).

7

Secretary also did not directly challenge any of the requested hours as unreasonable.

The attorneys' and paralegals' entries describe the activities with sufficient detail that the reasonableness of the work may be assessed. Due to the fulsome descriptions in the timesheets and the overall reasonableness of the activities, only minimal adjustments are required.

The attorneys charged a few hours that involved detailed reviews of the medical records, which should have been billed at paralegal rates. When an attorney does the work of a paralegal or administrative assistant, he or she should be paid a rate commensurate with the nature of the work. See Valdes v. Sec'y of Health & Hum. Servs., 89 Fed. Cl. 415, 425 (2009) (noting that "the Special Master exercised appropriate discretion in denying requested costs for work performed by Petitioner's counsel's associate" when the special master determined "that the associate's time spent obtaining medical records was more consistent with paralegal duties."). Additionally, the attorneys billed for some tasks that are better characterized as paralegal work and even some tasks that are secretarial in nature, such as filing exhibits and preparing exhibits for filing. See exhibit 102 at 2, 8, 9. To accomplish rough justice, the undersigned will reduce Ms. Cowart's fees award by $1,000.

For these reasons, Ms. Cowart is awarded $48,424.80 in attorneys' fees.

C.   Attorney's Costs

In the final fees motion, filed May 13, 2021, Ms. Cowart asks for $20,168.69 in costs. Although the final fees motion did not renew a request for the uncompensated work of Dr. McCabe ($6,332.50), the undersigned will consider these costs now as well. A small amount ($354.94) is for routine items such as obtaining medical records and literature. The costs for routine items are reasonable and awarded in full.

Next, the undersigned will address the remaining bulk of costs, $19,813.75 + $6,332.50, for obtaining reports from the experts. Reasonable expert fees are determined using the lodestar method, in which a reasonable hourly rate is multiplied by a reasonable number of hours. Caves v. Sec'y of Health & Hum. Servs., 111 Fed. Cl. 774, 779 (2013). Ms. Cowart seeks reimbursement for work performed by three people: Dr. McCabe, Dr. Tracey Marks, Dr. Gershwin.

1.   Dr. McCabe

Ms. Cowart requested reimbursement of Dr. McCabe's work as part of her August 30, 2018 motion for interim attorneys' fees and costs. This motion was

8

supported by an invoice from Dr. McCabe.  Exhibit 51 and 52.  Exhibit 52 shows a sample invoice from Dr. McCabe in a different case, in which he charged $395 per hour.

At the interim fees phase of the case, Ms. Cowart supplied Dr. McCabe's invoices.  See exhibit 51.  Dr. McCabe billed at $490 per hour.  The invoice includes 4 hours reviewing case documents, 1 hour of teleconferencing, 2.75 hours of research, and 4.5 hours writing his report.  An associate, Jamie Williams, Ph.D., billed for half an hour of peer review at $440 per hour.  Lois Nase billed for half an hour of research at $220 per hour.  Collectively, this work was billed for $6,332.50.  Line-item entries, albeit vague ones, were provided for review.  See exhibit 51.

After reviewing the arguments and evidence in support of each experts' requested rates, the undersigned found in the interim fees decision that Dr. McCabe had not justified the proposed rates.  See Interim Fees Decision, 2018 WL 7286513.  The undersigned encouraged Ms. Cowart to include Dr. McCabe's invoice again and to provide additional evidence in support of Dr. McCabe's requested rate in the final fees application.  Id.

In her May 13, 2021 motion for attorneys' fees and costs, Ms. Cowart did not request any reimbursement for Dr. McCabe's work.  See Pet'r's Mot., filed May 13, 2021, at 13-15 (discussing work performed by Dr. Marks and Dr. Gershwin).  Ms. Cowart did not provide additional support for Dr. McCabe's work.  Along with the May 13, 2021 motion, Ms. Cowart included two invoices for Dr. McCabe: 0.25 hours for teleconferencing and 0.75 hours for reviewing case documents.  See exhibit 104 at 18-19.  These amounts were requested in a list of petitioner's fees and expenses.  Exhibit 102 at 12.  Those two entries were billed for $371.25 and $122.50.

However, there were two other line entries billing for Dr. McCabe's work: one for $2,525.00 and on for $495.00.  Exhibit 102 at 11.  Corresponding invoices from Dr. McCabe were not provided.

After the June 30, 2022 order, a supplemental invoice history was provided, which lists payments and invoices in this matter.  See Pet'r's exhibit B.  Individual invoices for the $2,525 and $495 payments were not provided, making it impossible to determine what work was performed, by whom, and for how long.  Additionally, the supplemental invoice history also lists an unsubstantiated (and previously unclaimed) bill of $2,082.50.

The revised motion for attorney's fees and costs states Dr. McCabe spent 23 hours on this case, and his staff spent 1.5 hours.  Pet'r's Supp. Mot. for Attorney's

9

Fees and Expenses, filed Aug. 1, 2022.[6] Mr. Greenwood represents that Dr. McCabe's work included 5.25 hours reviewing case documents, 3 hours of research, 2.25 hours in teleconferences, 8.5 hours of writing his reports, and 4 hours of analysis. Id. at 3. A supplemental invoice history was provided, but it contains little information about what work was performed. Pet'r's Exhibit B. Mr. Greenwood stated the McCabe "invoices and receipts for payment are his business records and are not within my personal knowledge." Pet'r's Exhibit A. In total, Mr. Greenwood requests $11,928.75 for the contributions of Dr. McCabe (and his associates). This amount includes the previously uncompensated amount of $6,332.50. See Pet'r's Exhibit B.

Dr. McCabe's initial report did not comply with the expert instructions and necessitated a supplemental report. Thus, some amount of the time he billed was not productive. Additionally, even with the additional information provided, Dr. McCabe's rate has not been justified. Furthermore, invoice history appears to be missing. Before the barebones historical statement of bills (Pet'r's Exhibit B) was provided, only $6,826.25 could be accounted for.

For a reasonable hourly rate for a Ph.D. immunologist, the undersigned has awarded $250.00 per hour. Dominguez v. Sec'y of Health & Hum. Servs., No. 12-378V, 2018 WL 3028975, at *5 (Fed. Cl. Spec. Mstr. May 25, 2018); see also Lewis v. Sec'y of Health & Hum. Servs., 149 Fed. Cl. 308, 315 (2020) (denying motion for review regarding the hourly rate for a person with a Ph.D. in immunology who does not have a medical license). However, an expert's hourly rate may be reduced due to poor performance. Frantz v. Sec'y of Health & Hum. Servs., 146 Fed. Cl. 137, 146 (2019). Here, the work of Dr. McCabe was not good. Therefore, a reasonable hourly rate for his work is $125.00 per hour (or a reduction of approximately 50%). The rates for other people associated with Dr. McCabe will be reduced by this same metric (50%).

Invoices document 13.25 hours of work for Dr. McCabe. Exhibit 51, exhibit 104 at 18-19. The 23 hours claimed have not been substantiated. An additional $165 (representing 50% of the amounts claimed for Dr. Williams and Ms. Nase in exhibit 51) will be added to Dr. McCabe's contributions.

---

[6] It is unclear where the additional 0.5 hours of labor should be allocated. As discussed above, Jamie Williams billed for 0.5 hours, and Lois Nase billed for 0.5 hours. This totals to 1 hour, not 1.5 hours. Because the undersigned cannot determine how to allocate the additional 0.5 hours, due to the lack of adequate billing histories provided, the undersigned will only award 0.5 hours for each of Dr. McCabe's assistants.

Mr. Greenwood's explanation that he does not have access to Dr. McCabe's business invoices is unpersuasive for multiple reasons. One wonders whether Mr. Greenwood paid Dr. McCabe without an invoice. Even if Mr. Greenwood, as the manager of a law firm, paid an expert without an invoice, the Vaccine Program requires more documentation. The Guidelines specify that experts are expected to submit invoices explaining the basis of their work, which is the basis for any claim of compensation. See Guidelines, Section X, Chap. 3. Furthermore, the undersigned informed Mr. Greenwood and Dr. McCabe about the need for an invoice. Instructions, issued Apr. 10, 2017, at 7-8. Thus, although Mr. Greenwood was informed about the documentation required to substantiate a request for an expert's work, Mr. Greenwood and Dr. McCabe have not substantiated a significant portion of the request.

Accordingly, based upon the invoices and the quality of Dr. McCabe's work, a reasonable amount of compensation for Dr. McCabe's work is $1,821.25.

### 2. Dr. Marks

Dr. Marks provided an additional 6 hours of work reviewing records for forensic consultations at $425 per hour, for a total of $2,550. This rate is in line with previously awarded amounts. Interim Fees Decision, 2018 WL 7286513. The undersigned accepts this rate and number of hours as reasonable.

### 3. Dr. Gershwin

The requested compensation for work performed by Dr. Gershwin, however, requires adjustments. Dr. Gershwin billed for 27.5 hours of work at a rate of $500 per hour, for a total of $13,750. Despite significant flaws, Dr. Gershwin's report satisfied the reasonable basis standard. But, for the following reasons, his proposed rate must be reduced. See Frantz v. Sec'y of Health & Hum. Servs., 146 Fed. Cl. 137, 146 (2019) (affirming that special masters may reduce the compensation rate for an expert when expert's work was not worth the charged rate).

Dr. Gershwin's first report did not express his opinion about when Ms. Cowart allegedly developed fibromyalgia. Decision Denying Entitlement, 2021 WL 253977, at *6 (Fed. Cl. Spec. Mstr. Jan. 5, 2021). This necessitated a supplemental report and more work performed from Dr. Gershwin. See Order, issued April 24, 2019. More troubling, Dr. Gershwin proposed a conclusory theory, without explanation or evidence, that Ms. Cowart's doctors' overtreated her, which led to fibromyalgia. 2021 WL 253977, at *10. The undersigned also noted that it appeared Dr. Gershwin misread the medical records, shifting the day of diagnosis. Id. at 13. These compounding problems reduce the value of Dr.

11

Gershwin's contributions to Ms. Cowart's case. The undersigned finds that a reasonable rate for Dr. Gershwin's work on this case is $250 per hour. This amounts to a $6,875 reduction, and a total of $6,875 for Dr. Gershwin's contributions.

## Conclusion

Of the total amount of attorneys' fees requested ($49,424.80), Ms. Cowart is awarded **$48,424.80.** Of the total amount of costs requested ($20,168.69) and previously deferred ($6,332.50), Ms. Cowart is awarded **$11,601.19**.

**Accordingly, the undersigned awards the total of $60,025.99 as a lump sum in the form of a check jointly payable to Ms. Cowart and Ms. Cowart's counsel, Sean Greenwood.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master
